**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ACUITY, A MUTUAL INSURANCE COMPANY,

    Plaintiff,

v.                                                             No. 1:21cv00854

LBJ ENTERPRISES, LLC

    Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Acuity, A Mutual Insurance Company ("Acuity"), hereby brings this Complaint for Declaratory Judgment against LBJ Enterprises, LLC and alleges as follows:

## THE PARTIES

1. Plaintiff Acuity, a mutual insurance company, is a foreign corporation with its statutory home office located in Wisconsin. Acuity does business in the State of New Mexico and has complied with registration laws of the State of New Mexico pertaining to corporations engaged in the insurance business.

2. Defendant LBJ Enterprises, LLC ("LBJ") is a Delaware organized Limited Liability Company with its principal place of business in Lake Havasu City, Arizona. LBJ has two members: Jarett Portz and Mountain West Enterprises, LLC.

3. The Managing Member of LBJ is Jarett Portz who is a resident and citizen of the State of Arizona.

4. Mountain West Enterprises, LLC is an Arizona organized LLC with two members: Les Lamastus and Brenda Lamastus. Les and Brenda Lamastus are residents and citizens of the State of Missouri.

5. LBJ owns and operates car washes located in several states including New Mexico.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

7. There is complete diversity of citizenship as to all parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. The claims at issue in this action arose in the District of New Mexico. Venue is, therefore, proper in this Court pursuant to 28 U.S.C. § 1391.

9. Declaratory relief is requested pursuant to 28 U.S.C. § 2201.

10. There is an actual justiciable controversy between Acuity and LBJ regarding whether a claim LBJ submitted to Acuity is covered under a policy Acuity issued to LBJ covering property located at 9210 Eagle Ranch Road, N.W. Albuquerque, New Mexico. Consequently, this Court is vested with the power to declare and adjudicate the rights and other legal relationships of all parties to the instant litigation with respect to the issues raised by this Complaint.

## GENERAL ALLEGATIONS

*The Insurance Policy Issued by Acuity*

11. LBJ applied for an insurance policy through its agent Kimberly Portz who is the sister of Jarett Portz.

12. In its application for insurance, LBJ represented that it operated Car Washes that were not self-service. When asked whether any of the car wash bays allowed the customer to manually wash their own vehicle, LBJ responded "No".

13. The type of risk is material to whether Acuity elects to insure a property and Acuity relies on applications in determining whether or not to issue policies.

14. Replying on its statements contained in the application, Acuity issued LBJ a business policy ZA9951 to Named Insured LBJ Enterprises with a policy period of October 26, 2020 to September 1, 2021 (hereafter the Policy"). A copy of the Policy is attached hereto as Exhibit A.

15. The Policy covers several locations including property located at 9210 Eagle Ranch Road, Albuquerque, New Mexico (the "Eagle Ranch Location").

16. The Classification Description for each of the locations insured under the Policy is Car Washes – Not Self Service.

*LBJ's Operations at the Eagle Ranch Location*

17. The Car Wash at 9210 Eagle Ranch Road includes four self-serve bays in addition to one automatic bay.

18. LBJ ceased operations at the Eagle Ranch Location in May 2019.

19. LBJ did not notify Acuity that it had ceased operations at the Eagle Ranch Location and Acuity did not know that LBJ had ceased operations at the Eagle Ranch Location until after January 20, 2021.

20. LBJ did not disclose to Acuity that the business at the Eagle Ranch Location included self-service car washes.

21. Acuity would not have issued the Policy to LBJ had it known that LBJ operated self-service car washes.

22. Acuity would not have insured the Eagle Ranch Location if it knew it was a vacant building with no ongoing operations.

*The Fire*

23. On January 20, 2021 a fire at 9210 Eagle Ranch Road was reported to the Albuquerque Fire Department.

24. At the time of the fire, the building had been inhabited by transients with sleeping areas located within the building.

25. Prior to the date of the fire, LBJ was notified that transients were occupying the building and equipment at the property had been removed and/or destroyed. Graffiti and trash including drug paraphernalia was present throughout the building.

26. Prior to the fire, electrical wiring and other equipment had been removed from the building.

27. Acuity's investigation of the fire concluded that the fire originated in two distinct and non-communicating areas. The ignition source was determined as a probable handheld flame and the ignitions sequence was an intentional human act. The Cause Classification of the fire is incendiary.

28. The intentionally set fire at the Eagle Ranch Location is vandalism.

29. At the time of the fire, the Eagle Ranch Location was not under construction or renovation.

*The Claim and Relevant Policy Provisions*

30. The Acuity Policy provides:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> 1. **Covered Property**
>
>    Covered Property includes Buildings as described under item a below, Business Personal Property as described under item b below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under item 2, Property Not Covered.

CB-0002(1-19) at page 1.

31. The policy further provides:

> 3. **Covered Causes of Loss**
>
>    Risks of Direct Physical Loss unless the loss is:
>    a. Excluded in Property Exclusions; or
>    b. Limited in paragraph 4, Limitations;
>    that follow.

*Id.* at page 3.

32. Policy Exclusions include:

\*\*\*

> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>    \*\*\*
>    k. **Neglect**
>       Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.
>    l. **Other Types of Loss**
>       (1) Wear and tear;

4

*Id*. at page 18.

33. Policy Conditions also include the following conditions:

> **C. CONCEALMENT, MISREPRESENTATION OR FRAUD**
>
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> 1. This Coverage Part;
> 2. The Covered Property;
> 3. Your interest in the Covered Property; or
> 4. A claim under this Coverage Part.
>
> **L. REPRESENTATIONS**
>
> By accepting this policy, you agree:
> 1. The statements in the Declarations are accurate and complete;
> 2. Those statements are based upon representations you made to us; and
> 3. We have issued this policy in reliance upon your representations.

34. The Property Loss Conditions include a vacancy provision providing

> **8. Vacancy**
>   **a. Description of Terms**
>   (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (a) and (b) below:
>   (a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.
>   (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>     (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or
>     (ii) Used by the building owner to conduct customary operations.
>   (2) Buildings under construction or renovation are not considered vacant.
>
>   **b. Vacancy Provisions**
>   If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

> (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
>   (a) Vandalism;
>   (b) Sprinkler leakage, unless you have protected the system against freezing;
>   (c) Building glass breakage;
>   (d) Water damage;
>   (e) Theft; or
>   (f) Attempted theft.
> (2) With respect to Covered Causes of Loss other than those listed in (1)(a) through (1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

CB-0002(1-19) at pages 26-27.

35. LBJ reported the loss to Acuity and provided Acuity with a sworn completed Proof of Loss form.

36. The Proof of Loss form itself clearly states that "the information you provide, including the additional documentation material, will be used by us in processing your claim."

37. On the second page of the Proof of Loss, it states that whoever signs the Proof of Loss has "not made claim for any property not damaged by this loss" and has not "attempted to nor [has] deceived or defrauded Acuity."

38. The insured who signs the Proof of Loss form then swears, under penalty of perjury, that they have "read and completed the above sworn statement in Proof of Loss, including any attachments, and that the information given by me is true and correct."

39. Finally, before signature, the form states in bold letters, "CAUTION: FURNISHING FALSE INFORMATION MAY RESULT IN DENIAL OF YOUR CLAIM."

40. The Proof of Loss included $810,256.23 in claimed damages.

41. Following receipt of the Proof of Loss, Acuity completed an Evaluation Under Oath ("EUO") of both Jarett Portz and Les Lemastus.

42. Mr. Portz signed the Proof of Loss and represented on the Proof of Loss form that before the loss there was no change in the interest, use or occupancy of the buildings and their contents. The representation was false as the property had been vacant for more than a year prior to the fire. The representation was also false because many contents of the building had been removed prior to the fire.

43. At their EUOs both Mr. Portz and Mr. Lemastus confirmed that the Eagle Ranch Location was vacant for well over sixty days prior to the fire.

44. Mr. Lemastus also admitted that some items listed in the sworn Proof of Loss were not actually at the Eagle Ranch Location at the time of the fire and that the Proof of Loss included equipment that was not damaged in the fire.

45. Mr. Lamastus actually admitted that he did not know which if any of the items claimed on the Proof of Loss were actually damaged in the fire.

46. Mr. Portz testified that he had no personal knowledge about whether the equipment on the Proof of Loss was actually at the Eagle Ranch Location prior to the fire.

47. After Acuity concluded its investigation, it sent a letter to LBJ notifying LBJ that Acuity had concluded that there was no coverage under the Policy for the loss claimed because the building was vacant more than 60 days before the fire. Further, any damage that occurred prior to the intentionally set fire due to other vandalism would also not be covered as the building was unoccupied more than 60 days and was not under construction or being renovated at the time of the loss. The letter also sets forth the additional Policy exclusions for neglect and wear and tear cited above which are also applicable as Acuity's investigation revealed that the premises were neglected and wear and tear was evident throughout the Eagle Ranch Location.

48. In addition, Acuity's letter discussed the fact that the Proof of Loss includes items as being damaged in the fire when in fact they were not and the Policy coverage is void where there has been an intentional concealment or misrepresentation of a material fact concerning a claim.

49. Acuity's letter also explains the LBJ represented in its application that the car wash business was not self-service when in fact it was and the Policy was issued based on information that was not true when the application was submitted to it as required by the Policy and thus the Policy conditions were not met.

## **COUNT ONE – DECLARTORY RELIEF**

50. Acuity incorporates the allegations of paragraphs numbered 1 through 48 of the Complaint as though fully set forth herein.

51. The rights and obligations of Acuity and LBJ are in dispute and affected by the terms and conditions of the Acuity Policy at issue and New Mexico case law.

52. Thus, a controversy between the parties exists regarding whether Acuity owes any sums to LBJ for the claim submitted for damages following the fire at the Eagle Ranch Property.

53. As set forth above, Acuity does not owe any sums for the damages claimed on the Proof of Loss because the Eagle Ranch Location had been vacant for more than sixty consecutive days before the loss or damage occurred, and the Vacancy Provision of the Policy provides that Acuity will not pay for any loss or damage caused by Vandalism where the loss or damage occurs and the building has been vacant for more than sixty consecutive days.

54. Further, Acuity does not owe any sums for the damages claimed on the Proof of Loss because LBJ intentionally concealed or misrepresented a material fact concerning the business operations at Eagle Ranch Location when it represented that the Car Wash was not Self-Service and failed to disclose that the building was vacant for more than a year prior to the loss.

55. Further, Acuity does not owe any sums for the damages claimed on the Proof of Loss because LBJ intentionally concealed or misrepresented a material fact concerning the claim when it claimed on its Proof of Loss that there was no change in the interest, use or occupancy of the buildings and their contents and included equipment in the Proof of Loss that was not actually damaged in the fire.

56. LBJ disagrees with Acuity's coverage decision.

57. By reason of the foregoing, there now exists an actual justiciable controversy between Acuity and LBJ as required by 28 U.S.C. § 2201. Consequently, this Court is vested with the power to declare and adjudicate the rights and other legal relationships of all parties to the instant litigation with respect to the issues raised by this Complaint.

WHEREFORE, Acuity respectfully requests that this Court declare the rights and obligations of the parties hereto in accordance with Acuity's contentions herein; specifically that:

(A) Judgment be entered in Acuity's favor and the Court enter a declaration regarding the rights and obligations of each of the parties with respect to the dispute herein and find that there is no coverage under the Acuity Policy policies for the damages claimed by LBJ following the fire at the Eagle Ranch Location;

(B) Awarding Acuity such other relief, including its costs as this Court deems just and proper.

                MODRALL, SPERLING, ROEHL, HARRIS
                   & SISK, P.A.

            By: */s/ Jennifer A. Noya*
                Jennifer A. Noya
                Mia K. Lardy
                Attorneys for ACUITY
                Post Office Box 2168
                Bank of America Centre, Suite 1000
                500 Fourth Street, N.W.
                Albuquerque, New Mexico 87103-2168
                Telephone: (505) 848-1800

*W4142581.DOCX*